IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

MEDFORD DIVISION

**UNITED STATES OF AMERICA,**

  Plaintiff,

 v.

**SHANNON CHRISTOPHER HARROP; JULIUS DIABLO FRANKLIN; RASHAD MAKKEL AUSTIN; DERRICK FRANKLIN; DELANDER EDWARD MOORE; WILLIAM EARL PARDUE; NATHAN DANIEL PERKINS; JULIA MARIE MACLENNAN; MICHAEL JOSEPH MANRING,**

  Defendants.

No. 1:20-cr-00260-AA

**OPINION & ORDER**

AIKEN, District Judge.

This case comes before the Court on a Motion to Compel Discovery filed by Defendant Julius Diablo Franklin, joined by Defendants William Earl Pardue, Delander Edward Moore, and Derrick Franklin. ECF Nos. 192, 195, 196, 212. The Court heard oral argument on May 12, 2021. ECF No. 214. For the reasons set forth below, the motion is DENIED without prejudice.

## LEGAL STANDARDS

### I.     Rule 16

Federal Rule of Criminal Procedure 16 states that the Government must permit the defendant to inspect and copy documents if the documents are "within the government's possession, custody, or control" and are "material to preparing the defense." Fed. R. Crim. P. 16(a)(1)(E). Establishing materiality requires a defendant to provide "facts which would tend to show that the Government is in possession of information helpful to the defense." *United States v. Santiago*, 46 F.3d 885, 894 (9th Cir. 1995) (internal quotation marks and citation omitted).

A defendant's right to discovery under Rule 16, although broad, is not unlimited. Rule 16(a)(2) excludes some information from disclosure, including "reports, memoranda, or other internal government documents made by an attorney for the government or other government agent in connection with investigating or prosecuting the case." Fed. R. Cim. P. 16(a)(2). "Thus, even materials that are discoverable under Rule 16(a)(1)(E) may nevertheless be exempt from disclosure under Rule 16(a)(2)." *United States v. Pac. Gas & Elec. Co.*, Case No. 14-cr-00175-THE, 2016 WL 3185008, at *2 (N.D. Cal. June 8, 2016) (citing *United States v. Fort*, 472 F.3d 1106, 1110 (9th Cir. 2007). "The purpose of the work product exception is to protect from disclosure the opinions and mental impression of government counsel and government agents in conducting their investigation and prosecution of the case." *United States v. Heine*, 314 F.R.D. 498, 501 (D. Or. 2016) (internal quotation marks and citation omitted).

Additionally, a defendant must make a prima facie showing of materiality before obtaining discovery under Rule 16(a)(1)(E). *United States v. Stever*, 603 F.3d 747, 752 (9th Cir. 2010). "Neither a general description of the information sought nor conclusory allegations of materiality suffice; a defendant must present facts which would tend to show that the Government is in possession of information helpful to the defense." *United States v. Mandel*, 914 F.2d 1215, 1219 (9th Cir. 1990). The scope of discovery under Rule 16 is broader than *Brady* because "[i]nformation that is not exculpatory or impeaching may still be relevant to developing a possible defense." *United States v. Muniz-Jaques*, 718 F.3d 1180, 1183 (9th Cir. 2013).

## II. *Brady* Material

"There is no general constitutional right to discovery in a criminal case." *Weatherford v. Bursey*, 429 U.S. 545, 559 (1977). However, the Government has a separate due process obligation to disclose "evidence favorable to the accused . . . [that] is material either to guilt or to punishment." *Brady v. Maryland*, 373 U.S. 83, 87 (1963). Favorable evidence includes material which impeaches a prosecution witness. *Giglio v. United States*, 405 U.S. 150, 154 (1972). "The government's *Brady* obligation is a self-executing responsibility on the part of the prosecutor" and "there is no need for a court order to require compliance with *Brady*." *Pac. Gas & Elec. Co.*, 2016 WL 3185008, at *2 (internal quotation marks and citations omitted, alterations normalized); *see also United States v. Jennings*, 960 F.2d 1488, 1491-92 (9th Cir. 1992) (admonishing courts to avoid interfering with executive branch *Brady*

obligations unless there is "a clear basis in law or fact to believe that [interference is] necessary.").

## DISCUSSION

As noted, this case comes before the Court on a joint Motion to Compel by Defendants Julius Diablo Franklin, Pardue, Moore, and Derrick Franklin (the "moving Defendants"). During the hearing on this matter, the Government represented that all discoverable material would be produced to Defendants by July 1, 2021 and the Court set the discovery deadline in this matter for that date.

The moving Defendants are charged for their roles in the planned robbery of a marijuana warehouse in southern Oregon. They planned to carry out the robbery by using a technique they called "the Boys," in which the moving Defendants would gain access to the warehouse by pretending to be police executing a search warrant and using police disguises, firearms, and zip-ties. Once inside, the moving Defendants planned to neutralize any opposition and steal a large stockpile of marijuana. The moving Defendants were recruited by co-Defendant Christopher Shannon Harrop to carry out the robbery. The Government alleges that Harrop had previously orchestrated a series of marijuana-related robberies in southern Oregon using broadly similar tactics, although the moving Defendants dispute that there is any evidence that they were personally involved in the earlier robberies.

Unbeknownst to the moving Defendants, the warehouse they intended to rob was fictitious and part of a "reverse sting" operation by police.[1] The ATF, together

---

[1] The Ninth Circuit provided a concise description of a reverse sting operation in *United States v. Black*, 733 F.3d 294 (9th Cir. 2013): "As an alternative to planting fake drugs in a stash house and

with local law enforcement, used undercover agents and confidential informants to pass information about the fictitious marijuana warehouse to Harrop. Harrop recruited the moving Defendants and joined with them in planning the robbery. When the moving Defendants, together with several co-Defendants, arrived at the site of the warehouse on July 14, 2020, they were arrested by waiting law enforcement.

An indictment was issued in this case on July 23, 2020. ECF No. 46, and the moving Defendants were charged with Conspiracy to Interfere with Commerce by Robbery in violation of 18 U.S.C. § 1951 (Count 5); Conspiracy to Possess with Intent to Distribute Marijuana in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(B)(vii), and 847 (Count 6); and Possession of a Firearm in Furtherance of a Drug Trafficking Crime in violation of 18 U.S.C. § 924(c)(1)(A) (Count 7).[2] Julius Franklin was also charged with Felon in Possession of a Firearm in violation of 18 U.S.C. § 922(g)(1) (Count 8). Significantly, the moving Defendants are all African Americans and are charged in connection to the planned robbery of the fictitious warehouse on July 14, 2020. Several co-Defendants, who are not African American, are charged with offenses related to an earlier robbery of actual marijuana grow operations in southern Oregon.[3]

---

confronting armed robbers once they broke into the house, ATF developed what it believed was a safer technique. ATF agents, working undercover, would describe a fictitious cocaine stash house to suspects, offering them the opportunity to plan and carry out an armed robbery of the stash house. Once the robbery plan was developed and the crew members were on their way to what they believed was a real armed home invasion, they were arrested." *Id.* at 298.

[2] In addition to the moving Defendants, Counts 5 through 7 are also alleged against Harrop and Rashad Makkel Austin.

[3] Harrop, who is white, is charged in connection to both the July 14, 2020 robbery of the fictitious warehouse (Counts 5-7) and in connection with the earlier robbery (Counts 1-3).

As noted, this case comes before the Court on a motion to compel. The moving Defendants seek to compel production of:

(1) All manuals, policies, standing orders, directives, or other materials providing guidance to agents with the Bureau of Alcohol, Tobacco, Firearms, and Explosives (ATF) from 2015-2020 regarding reverse-sting stash house robbery investigations;

(2) Any and all communications amongst ATF agents, between ATF agents and other persons, amongst Medford Police Department personnel, and between Medford Police Department personnel and other persons regarding the investigation leading to the arrest of the moving Defendants. This includes all recordings, text messages, and emails and should be construed to include communications pertaining to planning the fictitious armed robbery one or about July 14, 2020, as well as the aborted fictitious burglary in May 2020; and

(3) Any data compiled by the ATF or U.S. Department of Justice, however stored, detailing the race or ethnicity of all persons charged in cases stemming from ATF reverse sting stash house robbery investigations from 2015 through the present. If such data has not been compiled, any and all documents from which the race of such defendants could be ascertained including all charging documents stemming from ATF reverse-sting stash house robbery investigations from 2015 through the present.

Julius Franklin Request for Discovery ¶¶ 10-12. ECF No. 128.

The discovery requested by the moving Defendants is aimed at demonstrating that the ATF's use of the reverse sting operation in this case was part of a widespread practice of disproportionately targeting non-white defendants.

As previously noted, discovery was ongoing at the time of the hearing and the Court set a discovery deadline of July 1, 2021. The Government represents that it has complied and continues to comply with its discovery obligations, including its obligation to provide material required by *Brady* and its progeny. Accordingly, the Court declines to compel production of the requested material pursuant to the general principles of Rule 16 or the specific requirements of *Brady* at this time.

However, the core of the moving Defendants' motion is that the use of a reverse sting operation in this case constituted outrageous governmental conduct and/or amounted to selective enforcement on the part of federal law enforcement. The moving Defendants also contend that the use of the reverse sting operation was part of a program of sentencing entrapment aimed at subjecting the moving Defendants to mandatory minimum sentences. These arguments are addressed below.

### I. Outrageous Governmental Conduct

"Outrageous governmental conduct occurs when the actions of law enforcement officers or informants are so outrageous that due process principles would absolutely bar the government from invoking judicial processes to obtain a conviction." *United States v. Black*, 733 F.3d 294, 302 (9th Cir. 2013) (internal quotation marks and citation omitted).

> There is no bright line dictating when law enforcement conduct crosses the line between acceptable and outrageous, so every case must be

> resolving on its own particular facts. In assessing the reasonableness of various law enforcement actions and tactics, however, we have set forth ground rules that provide some guidance. For example, it is outrageous for government agents to engineer and direct a criminal enterprise from start to finish, or for the government to use excessive physical or mental coercion to convince an individual to commit a crime. It is also outrageous for the government to generate new crimes merely for the sake of pressing criminal charges. It is not outrageous, however, to infiltrate a criminal organization, to approach individuals who are already involved in or contemplating a criminal act, or to provide necessary items to a conspiracy. Nor is it outrageous for the government to use artifice and stratagem to ferret out criminal activity.

*Black*, 733 F.3d at 302 (internal quotation marks and citations omitted, alterations normalized).

In assessing whether government conduct was outrageous, courts consider a number of factors including: (1) known criminal characteristics of the defendants; (2) individualized suspicion of the defendants; (3) the government's role in creating the crime of conviction; (4) the government's encouragement of the defendants to commit the offense conduct; (5) the nature of the government's participation in the offense conduct; (6) the nature of the crime being pursued "and necessity for action in light of the nature of the criminal enterprise at issue." *Black*, 733 F.3d at 303.

In the present case, the Government did not target the moving Defendants specifically, but instead targeted Harrop as the suspected organizer of a string of marijuana-related robberies in southern Oregon. Harrop then recruited the moving Defendants, who planned the robbery. The moving Defendants presented themselves to the undercover agents as experienced robbers, as evidenced by their planned use of police disguises and "the Boys" strategy. It is also significant that the Government did not invent the fictitious warehouse robbery out of thin air but presented it to

Harrop in an effort to direct the course of an ongoing spate of robberies in the direction of the reverse sting operation. There is no evidence that the undercover agents or informants put any pressure on the moving Defendants or attempted to coerce them into carrying out the planned robbery, beyond simply presenting them with a sufficiently tempting target.

On this record, the Court concludes that the moving Defendants have failed to make a sufficient showing of outrageous governmental conduct to justify their motion to compel.

## II. Selective Prosecution and Selective Enforcement

The moving Defendants also claim that they have been subjected to selective enforcement by the ATF and selective prosecution by the Government on the basis of race. To make out a claim for selective prosecution, a defendant must show both discriminatory effect and discriminatory purpose on the part of the prosecutor. *United States v. Armstrong*, 517 U.S. 456, 465 (1996). Prosecutors are entitled to a presumption of regularity in their decision-making and to be entitled to discovery on such a claim, the Supreme Court has established a "rigorous standard," under which a defendant must show that "the Government has failed to prosecute other who are similarly situated to the defendant" as evidence of discriminatory effect. *Id.* at 468-69.

In the case of selective enforcement, no such presumption of regularity attaches to the conduct of law enforcement. *United States v. Sellers*, 906 F.3d 848, 852-53 (9th Cir. 2018). Furthermore, "the nature of reverse-sting operations means

that no evidence of similarly situated individuals who were not targeted exists." *Id.* at 853. As a result, the standard for a defendant seeking discovery on a claim of selective enforcement is correspondingly lower than the standard for discovery in a claim of selective prosecution. The Ninth Circuit articulated the standard as follows:

> [A] defendant need not proffer evidence that similarly-situated individuals of a different race were not investigated or arrested to receive discovery on his selective enforcement claim in a stash house reverse-sting operation case. While a defendant must have *something* more than mere speculation to be entitled to discovery, what that *something* looks like will vary from case to case. The district court should use its discretion—as it does for all discovery matters—to allow limited or broad discovery based on the reliability and strength of the defendant's showing.

*Sellers*, 906 F.3d at 855 (emphasis in the original).

In this case, the moving Defendants point to their white co-Defendants who, aside from Harrop, were only charged in connection with the earlier stash house robberies as evidence of selective enforcement, but this is not borne out by the record. As the Government points out, those co-Defendants were not involved in the planned robbery of the fictitious warehouse. Rather, it appears that it was Harrop who was the target of the police investigation as the suspected organizer of the prior robberies and it was Harrop who was approached with information about the fictitious warehouse.

The fact that reverse-sting operations have a history of disparate impact and use against non-white defendants does not automatically impute any sort of discriminatory motivation to the federal agents in this case. This is especially true

in the present case because Harrop, and not law enforcement, recruited the moving Defendants to plan and carry out the robbery.

The Court concludes that the moving Defendants have failed to establish a right to discovery under a theory of either selective prosecution or selective enforcement.

### III. Sentencing Manipulation

The moving Defendants also contend that the ATF employed an amount of marijuana in the fictitious stash house to place the moving Defendants above the threshold to trigger mandatory minimum sentences. In support of this argument, the moving Defendants point to a decision by law enforcement to abandon an earlier reverse sting operation planned for May 2020 and orchestrated by the Medford Police Department in favor of the ATF-run July 2020 reverse sting operation that resulted in the arrest of the moving Defendants. The moving Defendants assert that the May 2020 operation involved an unguarded warehouse and so it would be less likely that the robbers would be armed. The Government asserts that the May 2020 operation was abandoned in favor of using a confidential informant to introduce an undercover agent to further the investigation into Harrop and Julius Franklin.

"Sentencing entrapment occurs when a defendant is predisposed to commit a lesser crime, but is entrapped by the government into committing a crime subject to more severe punishment." *United States v. Mejia*, 559 F.3d 1113, 1118 (9th Cir. 2009). "In the context of a fictional drug stash house robbery, a defendant can show sentencing entrapment by demonstrating that he lacked predisposition—either

through a lack of intent or a lack of capability—to conspire with others to take by force the amount of [drugs] charged." *Black*, 733 F.3d at 311.

In this case, the fictitious warehouse invented by the ATF bore a close resemblance to the real grow operations that had been robbed in late 2019 and early 2020 by individuals allegedly connected to Harrop and possibly to some of the moving Defendants. For example, on December 19, 2020, several people dressed as police robbed a marijuana grow in Applegate, Oregon. The robbers ended up in an armed standoff with one of the victims and were only able to make off with five pounds of marijuana and $5,000 in cash, but the there were hundreds of "totes" of marijuana at the scene. In July 2020, Harrop told an undercover agent that such totes can store twenty-five pounds of marijuana, suggesting that the Applegate grow operation was storing thousands of pounds of marijuana.

In another marijuana grow robbery on April 25, 2020, which likewise ended in an armed confrontation between the robbers and the victims, the robbers were able to make off with seventy-one pounds of marijuana and four jars of marijuana extract. Harrop was later recorded telling an undercover agent that the grow contained marijuana, extracts, oil, and cash amounting to "a good like three or four hundred-thousand-dollar lick [robbery]."

By contrast, when the undercover agents described the fictitious stash house to Harrop, they told Harrop that it contained between seven hundred and eight hundred pounds of marijuana, but no cash. Although this is a substantial amount and created an attractive target for a robbery, it is consistent with the amount of

marijuana present at the grows targeted in the earlier robberies. Indeed, it is substantially less than what was allegedly present at the Applegate grow operation in December 2019. On this record, the Court concludes that the moving Defendants have not shown that the Government inflated the amount of marijuana involved in to trigger mandatory minimum sentences.

Nor have the moving Defendants demonstrated that they lacked a predisposition to carry out the robbery. The Government has submitted evidence that Harrop and some of the moving Defendants boasted about prior robberies to reassure the undercover agents of their expertise and professionalism. The Court therefore denies the motion to compel.

## CONCLUSION

The Motion to Compel Discovery filed by Defendant Julius Diablo Franklin, joined by Defendants William Earl Pardue, Delander Edward Moore, and Derrick Franklin, ECF Nos. 192, 195, 196, 212, is DENIED without prejudice.

It is so ORDERED and DATED this  12th  day of July 2021

                                         /s/Ann Aiken
                                         ANN AIKEN
                                         United States District Judge